UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARL GREEN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civil Action No. 12-10604-DJC |
| ) | Civil Action No. 12-10835-DJC |
| ) | |
| STEPHEN S. GRAY, ) | |
| Chapter 11 Trustee of ) | |
| LocatePlus Holdings Corp., et al., ) | |
| ) | |
| Appellees. ) | |

**Casper, J.**                                                                                      **March 18, 2013**

**MEMORANDUM OF DECISION**

**I.     Introduction**

Appellant Carl Green ("Green") now appeals two orders of the bankruptcy court allowing motions by Appellee Trustee Stephen S. Gray, duly appointed Chapter 11 trustee of the LocatePlus Holdings Corp. (the "Trustee"). In the first of these appeals (No. 12-10604), Green appeals the final order of the bankruptcy court, entered on September 30, 2011, authorizing the auction and sale of the debtors' assets. In the second of his appeals (No. 12-10835), Green appeals the bankruptcy court's order authorizing the Trustee to employ the law firm of Verrill Dana LLP and Thomas H. Hoffman as co-special counsel in the underlying matter. For the reasons stated below, the Court AFFIRMS the order in No. 12-10604 and DISMISSES the appeal in No. 12-10835.

1

**II.     Factual Background**

    **A.  Course of Relevant Bankruptcy Filings and Proceedings**

This case and the related cases have an extensive history in the bankruptcy, but this Court recites only the portion of that history relevant to the matters now presented on appeal.  On June 16, 2011, LocatePlus Holding Corporation ("LocatePlus") and certain of its affiliated entities (collectively, "the Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Massachusetts ("bankruptcy court").  D. 2 at 2.[1]  On July 15, 2011, the bankruptcy court appointed the Trustee as the chapter 11 trustee for the Debtors pursuant to 11 U.S.C. § 1104(a) and Fed. R. Bankr. P. 2007.1.  D. 2 at 12.

Green identifies himself as Chairman of the Board of Directors of LocatePlus and claims to be the Debtors' largest secured creditor.  D. 9 at 7.  However, his alleged appointment to the board prompted appointment of the Trustee and the trustee of the LocatePlus Plan Trust, Craig Jalbert ("Plan Trustee") contests his status as a secured creditor and has sought to expunge his proof of claim because Green has failed to present any evidence confirming his purported status as a secured creditor.  D. 9 at 7.  Green's actions, specifically his filing of "excessive and frivolous motions, objections, appeals and multiple plans and disclosure statements," his institution of an adversary proceeding against the Trustee and other parties related to the Trustee, his breach of the automatic stay and the <u>Barton</u> doctrine, as articulated in <u>Barton v. Barbour</u>, 104 U.S. 126 (1881) and his "baseless" assertions of his status as a secured creditor, led the Trustee to file an adversary proceeding against him.  D. 9 at 8-9.  It also led the bankruptcy court to enter

---

[1] References to the docket in 12-cv-10604 will be indicated by "D."  References to the docket in the related case, 12-cv-10835, shall be to "RD."

a temporary restraining order and then a preliminary injunction against Green prohibiting him from, among other things, participating in the Debtors' bankruptcy cases and related adversary proceedings without prior leave of the bankruptcy court. D. 9 at 9, Exh. A and B.

### B. Auction and Sale of Debtor's Assets

On August 2, 2011, the Trustee filed a motion for entry of an order approving bidding procedures in connection with the proposed sale(s) of certain or substantially all of the Debtors' assets and other proposals, establishing certain related deadlines and granting related relief ("Bidding Procedures Motion"). D. 9 at 14. Green filed an objection to the Bidding Procedures Motion, but at a hearing on the motion, the bankruptcy court overruled his objection. D. 9 at 14. On August 15, 2011, the bankruptcy court entered an order granting the relief sought in the Bidding Procedures Motion and approving certain bidding procedures to govern the bids for the sale of certain or substantially all of the Debtor's assets and alternative proposals ("Bidding Procedures Order"). D. 9 at 15, Exh. G.

#### 1. *Auction Hearing*

Pursuant to the Bidding Procedures Order, the bankruptcy court held an auction for the sale of the Debtors' assets on September 21 and 22, 2011 ("Auction"). D. 9, Exh. D, E. Prior to the Auction, the Trustee received six bids for the Debtors' assets; three qualified bidders participated in the Auction. D. 9 at 69. There were nine rounds of bidding at the Auction, resulting in the acceptance of a bid from USA Protect with a stated value of $9,660,877 for the USA Protect transaction and a bid from LPHC Acquisition Partners LLC with a stated value of $520,304 for the LPHC Acquisition. Green did not appear at the Auction, either in person or by phone as he had done in other proceedings, but he did submit a bid. D. 9 at 80-81, 87. Upon the Trustee's request for a declaration that Green was not a qualified bidder and did not present a

qualified bid under the Bidding Procedures Order, the bankruptcy court declared that Green was not a qualified bidder because he was not present and that, upon review of his bid, it did not comply with the Bidding Procedure Order and he had not posted a deposit to the Trustee as required. D. 9 at 110, 116-17.

### 2. *Sales Hearing*

On September 26, 2011, the bankruptcy court conducted a hearing to approve the results of the Auction ("Sales Hearing"). All interested parties were given notice and an opportunity to be heard regarding the results of the Auction. Green filed an objection prior to the Sales Hearing and appeared at that hearing by telephone to attempt to effectuate a sale of certain of the Debtors' assets to him. D. 9, Exh. F at 228-30. Green asserted that the Trustee had certain conflicts of interest, objected to the sale of the assets on the grounds that the Trustee had not shown that the sale of the assets was fair to all creditors, and contended that his bid was competitive and that the bankruptcy court should accept it. Id. at 230-31. The bankruptcy court declined to do so, overruled his objection as "unmeritorious, indeed frivolous" and noted that at the previous Auction Hearing, the court had already ruled that his bid was not a qualified bid. Id. at 231-32.

### 3. *Sales Order*

The bankruptcy court entered an order authorizing and approving the proposed sale of the Debtors' assets, entry into and performance under the asset purchase agreements and related agreements, the assumption and assignment of certain executor contracts and related relief, entered on September 30, 2011 ("Sales Order"). D. 9, Exh. C. The Sales Order approved the USA Protect transaction and the LPHC Acquisition in Transactions contemplated by the Asset Purchase Agreements ("APAs"). Id. Among other things addressed in the Sales Order, the

bankruptcy court held that the "Transactions contemplated by the APAs are undertaken by the Purchasers without collusion and in good faith, as that term is defined in Bankruptcy Code Section 363(m) and[,] accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions . . ., unless such authorization and consummation of such sale are, prior to the Closing, duly and properly stayed pending appeal." Id.; see 11 U.S.C. § 363(m).  The bankruptcy court also found that the Bidding Procedures as set forth in the Bidding Procedures Order were "at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties" and that the Trustee and his professionals had complied, in good faith, with these procedures.  D. 9, Exh. C at 7-8.  The bankruptcy court further held that the negotiations and subsequent auction were conducted without collusion, in good faith and at arm's length and the same was true of the negotiation and execution of the APAs and the Transactions.  Id.  The bankruptcy also found that none of the Purchasers or affiliates were "insiders" of the Debtors and that each Purchaser had entered into the Transactions as a good faith purchaser.  Id.

    **C.**    **Retention of Verrill Dana LLP and Thomas H. Hoffman, Esq. as Special Counsel for the Trustee**

On February 15, 2012, the Trustee applied for authority to retain Verrill Dana LLP and Attorney Thomas Hoffman as special co-counsel for the Trustee pursuant to 11 U.S.C. § 1106, F. R. Bankr. P. 2014(a) and Bankr. L.R. 2014-1.  RD. 7-1 at 52.  In support of this application, the Trustee filed a disclosure of compensation and signed statements from Hoffman and Thomas O. Bean, a partner at Verrill Dana LLP.  RD. 7-1 at 72-79.  As part of the Trustee's Plan, the Trustee was to pursue various causes of action on behalf of the Debtors including but not limited to various adversary proceedings and matters for breaches of fiduciary duties by various

directors of the Debtors, causes of actions against the Debtors' former auditors and possible breaches of fiduciary duties by certain members of the Debtor's audit committee. Believing that it was in the best interest of the Debtors' estates to retain litigation counsel to assist in this pursuit, the Trustee proposed retention of both counsel. RD. 7-1 at 32. The Trustee articulated the reasons for seeking this particular counsel and the appointment of proposed counsel together as opposed to single counsel. The Trustee also asserted that both the firm and Attorney Hoffman were disinterested parties and both submitted statements as to their disinterestedness. RD. 7-1 at 72-79. The Trustee requested counsel's appointment *nunc pro tunc* to February 1, 2012 since they had been working on matters for the Trustee since that date. In terms of compensation, the Trustee proposed that counsel be paid for their services on a contingent fee basis and reimbursed for reasonable costs and expenses. Green objected to the proposed retention of special counsel on the grounds of lack of disinterestedness on the part of the Trustee. RD. 7-1 at 35.

    At a hearing on March 26, 2012, the bankruptcy court heard argument on the petition for authority to retain special counsel for the Trustee. RD. 7-1 at 32 *et seq*. Attorney Hoffman and an attorney representing Verrill Dana LLP were both present at the hearing. Id. at 38-39. The Trustee argued that the retention would be in the best interest of the Debtors' estates and the proposal had been vetted with the U.S. Trustee. Id. at 32. The court questioned why the Trustee needed both the law firm and Attorney Hoffman. Id. at 33. The Trustee responded that Attorney Hoffman had already devoted over 200 hours to investigating potential causes of actions and had assisted with a mediation in the matter. Id.  However, he noted that the additional matters to investigate were legally and factually complex and would be substantially more that Attorney Hoffman, a solo practitioner, could handle by himself, but that it would be best to have his knowledge and experience combined with the resources and experience of Verrill Dana LLP, a

100-lawyer firm.  Id.  The Trustee noted that the firm and Attorney Hoffman had agreed to share the contingency fee so that there was no additional cost for the dual appointment to the estate. Id. at 33-34.  In response to Green's objection to the appointment, the Trustee concluded that it was without merit and that, as discussed above, the Trustee had already filed suit against Green as result of his improper actions in the course of the bankruptcy proceedings.  Id. at 35-36.  The Court overruled Green's objection that the Trustee was not a disinterested person, noting that it had previously ruled that the Trustee does not represent an interest adverse to the estate.  Id. at 50.  The Court approved the employment of counsel, but chose to await the filing of the stipulated order before entering an order to that effect.  Id.

By Order dated March 29, 2012, the bankruptcy court allowed the application for authority to employ both Verrill Dana LLP and Attorney Hoffman as special counsel for the Trustee ("Retention Order").  D. 7-1, Exh. A.  The court ruled that the authorization to employ counsel would be *nunc pro tunc* to February 1, 2012 and approved the fee agreement including its provision for reimbursement of costs and expenses.  Id.

### III. Procedural Background

On April 2, 2012, in No. 12-cv-10604-DJC, Green filed his Notice of Appeal, appealing the Sales Order of the bankruptcy court (Feeney, Bankr. J.), entered on September 30, 2011.  D. 1.

On May 7, 2012, in a related case, in No. 12-cv-10835-DJC, Green filed his Notice of Appeal appealing the Order of the bankruptcy court (Feeney, Bankr. J.), entered on March 26, 2012, authorizing the retention of Attorney Hoffman and Verrill Dana LLP as special counsel for the Trustee.  RD. 1.  On November 29, 2012, the Court allowed the Plan Trustee's motion to substitute for the Trustee in this matter.  RD. 1.

The Court now addresses the issues raised in each of these appeals, both of which relate to LocatePlus's bankruptcy petition and related adversary proceedings and the same core of relevant facts.

## IV.     Standard of Review

On appeal, the "district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceeding." Fed. R. Bankr. P. 8013. In its review, the district court reviews the bankruptcy court's conclusions of law *de novo*, but must accept its findings of fact unless they were clearly erroneous. TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995); Fed. R. Bankr. P. 8013. Accordingly, as to the bankruptcy court's findings of fact, they "are to be set aside only if, on the entire evidence, [the Court is] 'left with the definite and firm conviction that a mistake has been committed.'" In re Tully, 818 F.2d 106, 109 (1st Cir. 1987) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

## V.     Discussion

### A.     The Court Affirms the Sales Order Where Gray Failed to Obtain a Stay and the Purchasers Acquired the Debtors' Assets in Good Faith and for Value

*1. Green Did Not Obtain a Stay of the Sales Order Pending Appeal*

At the end of the Sales Hearing, Green made an oral motion to the bankruptcy court to stay the Sales Order, but the court denied the request on the grounds that Green did not have a reasonable likelihood of success on appeal. D. 9, Exh. F at 246. Since Green did not receive a stay of the Sales Order pending this appeal, the transactions contemplated under the APAs and the Sales Order have been consummated. The Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization . . . of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m). Accordingly, it is well settled that without a stay of the Sales Order, the purchases and the transactions authorized under that Sales Order are protected from any reversal or modification on appeal. That is, pursuant to § 363(m), "[w]hen an order confirming a sale to a good faith purchaser is entered and a stay of that sale is not obtained, the sale becomes final and cannot be reversed on appeal." In re Saco Local Dev. Corp., 19 B.R. 119, 121 (B.A.P. 1st Cir. 1982). "Appellate courts have interpreted this section to prevent the overturning of a completed sale to a bona fide third party purchaser in the absence of a stay. . . . This rule protects the finality of bankruptcy sales and the reasonable expectations of third party purchasers. . . . [and] [i]t also reflects the inability of courts to supply a remedy once property has left the bankruptcy estate." Wintz v. American Freightways, Inc. (In re Wintz Cos.), 219 F.3d 807, 811 (8th Cir. 2000) (internal citations omitted); see Licensing by Paolo v. Sinatra (In re Gucci), 105 F.3d 837, 840 (2d Cir. 1997) (noting that "regardless of the merit of an appellant's challenge to a sale order, we may neither reverse nor modify the judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted"); see also Oakville Dev. Corp. v. Fed. Deposit Ins. Corp., 986 F.2d 611, 614 (1st Cir. 1993) (holding that failure to obtain a stay pending appeal of district court's refusal to reinstate injunction before a foreclosure sale renders the appeal moot). Simply put, "[u]nder 11 U.S.C. 363(m), a sale to a third-party purchaser acting in good faith may not be reversed on appeal unless the aggrieved party obtains a stay of the sale." Canzano v. Ragosa (In re Colarusso), 382 F.3d 51, 62 (1st Cir.

2004).  Green's failure to obtain a stay pending appeal renders this appeal regarding the Transactions moot.

### 2. *The Bankruptcy Court's Good Faith Finding Was Not Clearly Erroneous*

Although Green challenges not only the Transactions, but the good faith finding that triggers §363(m) as well, this latter argument also does not succeed.  In re Wintz Cos., 219 F.3d at 813; see In re Colarusso, 382 F.3d at 61 n. 10 ("observ[ing] that a stay is not required to challenge a sale on the ground that §363(m) does not apply because the purchaser did not act in good faith").  As thoroughly discussed in the Sales Order, the bankruptcy court found that the Bidding Procedures, negotiations with the Purchasers, the Auction and Sales were conducted without collusion and in good faith and that the Purchasers participated in the Auction and Sale in good faith and bought the assets of the Debtors in good faith and for fair value; i.e., that the Purchasers were good faith purchasers.  The bankruptcy court made these findings after a two-day Auction Hearing, Sales Hearing and there was unconverted testimony and evidence upon which the bankruptcy court relied to make its good faith finding.  Although Green objected to the Sale, his objection concerned the alleged conflicts of interest of the Trustee,  for which he did not provide support and which the bankruptcy court rightly rejected as without merit and frivolous and his claim upon appeal that the Trustee engaged in "obstructive tactics" is equally belied by the record below.  The findings by the bankruptcy court, based upon a well developed record, were not clearly erroneous and this Court will not disturb them.  See Meeks v. Red River Entertainment (In re Armstrong, 285 F.3d 1092, 1096 (8th Cir. 2002) (noting that "[a] finding of good faith is primarily a factual determination, which…[is] review[ed] for clear error").  For all these reasons, the Court affirms the Sales Order and dismisses the appeal in 12-cv-10604.

### B. Retention Order Was Properly Entered

#### 1. *The Retention Order is Not Appealable*

Since the Retention Order is neither a final order of court nor an interlocutory order for which Green sought leave of court to appeal, this Court does not have appellate jurisdiction to consider it. 28 U.S.C. § 158(a), in relevant part, provides that this Court "shall have jurisdiction to hear [bankruptcy] appeals (1) from final judgments, orders, and decrees; . . . and (3) with leave of the court, from other interlocutory orders and decrees" An order "is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" In re Bank of New England Corp., 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). The Retention Order is not a final order since it did not end the litigation on the merits. Rather, it is in the nature of an interlocutory order in that it "only decides some intervening matter pertaining to the cause, and . . . requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." Tonkoff v. C.C. Synoground (In re Merle), 481 F.2d 1016, 1018 (9th Cir. 1973). In fact, "[o]rders which grant or deny applications to employ professionals are typically found to be interlocutory." Simon v. Amir (In re Amir), 436 B.R. 1, 12 (Bankr. App. 6th Cir. 2010); see In re Cont'l Inv. Corp., 637 F.2d 1, 7 (1st Cir. 1980); Kelly, Howe & Scott v. Giguere (In re Giguere), 188 B.R. 486, 488 (D.R.I. 1995). This Court apparently is not alone in reaching this conclusion about the Retention Order as the Trustee asserts that the Bankruptcy Appellate Panel for the First Circuit dismissed a separate appeal by Green regarding the Retention Order on the grounds that it lacked appellate jurisdiction. D. 7 at 8 n. 5 (citing BAP No. MB 12-007, docket entry 8).

**VI.    Conclusion**

For the reasons stated above, the Sales Order that Green now appeals in No. 12-cv-10604-DJC is AFFIRMED.  Since, also for the reasons stated above, this Court lacks jurisdiction to consider the interlocutory appeal in 12-cv-10835-DJC, the Court also DISMISSES that appeal.

**So ordered.**

/s/ Denise J. Casper
United States District Judge